## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| LAURA CANADAY, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 1:19-CV-01084-STA-JAY |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| THE ANTHEM COMPANIES, INC., | ) ) | |
| Defendant. | ) ) | |
| | ) | |

### DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE

### TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND ..................................................................................................2

I.     Plaintiff, the Opt-In Plaintiffs, and the 2,500 Putative Plaintiffs Worked Across Dozens of Different Entities, Each Under Separate Operational Control .......................................2

II.    Plaintiff's Declarations Capture Only a Miniscule Fraction of the Experiences of the Thousands of Individuals in Her Proposed Collective .......................................................3

III.   Significant Differences Exist Among Putative Collective Members .................................4

LEGAL ARGUMENT...............................................................................................................6

I.     No Nationwide Class Can Exist Because This Court Lacks Personal Jurisdiction Over Out-of-State Plaintiffs.........................................................................................................7

II.    Conditional Certification is Not Automatic, But Rather is a Discretionary Tool Reserved For "Appropriate Cases".....................................................................................................8

III.   This is Not an Appropriate Case for Conditional Certification Because Plaintiff Fails to Demonstrate That She is "Similarly Situated" to Other Putative Plaintiffs.......................9

       A.    Conditional Certification is Improper Because Plaintiff's Evidence is Deficient ...9

       B.    Conditional Certification is Improper Because Plaintiff Fails to Show a Common and Unlawful Policy or Plan That Binds the Proposed Collective .......................13

       C.    Conditional Certification is Improper Because Plaintiff and the Putative Plaintiffs Are, in Fact, Not "Similarly Situated" to One Another ........................................16

IV.    In the Event That This Court Authorizes Notice (Which it Should Not), it Should Reject
       Plaintiff's Proposed Notice and Invasive Method for Distributing It ................................ 19

CONCLUSION ........................................................................................................................... 20

## INTRODUCTION

Plaintiff Laura Canaday assumes that this Court will reflexively certify a nationwide collective action under the Fair Labor Standards Act comprising approximately 2,500 registered nurses across four job titles, more than 26 states, and multiple direct employers. It is well within this Court's discretion to deny her request.

First, as detailed in Anthem's contemporaneously filed Motion to Dismiss the Claims of Opt-In Plaintiffs Mary Bishop, Latrice Gainey, and Patrice LeFlore, this Court lacks personal jurisdiction over the claims of putative plaintiffs who never worked and do not live in Tennessee. *Bristol-Myers Squibb Co. v. Superior Court of California*, requires this result, as various courts assessing FLSA claims, including at least three within the Sixth Circuit, have concluded.

Second, in her haste to seek this Court's blessing to blast notice of this case to a massive and diverse group, Canaday ignores her burden of proving that the group's members are "similarly situated." At best, she pays lip service to that burden by relying almost exclusively on nine fill-in-the-blank declarations (including her own). The declarations should not inform this Court's determination of the instant motion, however, because: (i) only one declarant—Canaday—worked in Tennessee and can properly assert claims in this forum; and (ii) the declarants do not testify with personal knowledge regarding the work- or pay-related circumstances of anyone but themselves. Their testimony is insufficient to justify a nationwide collective action.

Third, the evidence available at this stage suggests not only that Canaday was properly classified as exempt, but also that the numerous varied and skilled nurses working across the country are not "similarly situated" and should not be swept into an ill-fitting collective action. Canaday tries to blend nurses together across plans, states, divisions, and even direct employers by generalizing their experiences at the highest possible level. But at the level of common sense, myriad differences appear, from the reviews they handled, to the guidelines they used, to the

settings and levels of supervision in and under which they worked.

Finally, Canaday's failure to identify a common *unlawful* policy that binds nurses together further weighs against conditional certification. That her employer classified Canaday, a *registered nurse*, as exempt is not illegal standing alone. To the contrary, state-licensed nurses have satisfied the duties requirement of the FLSA's professional exemption "for more than 32 years." *See* 69 Fed. Reg. 22122, 22152 (Apr. 24, 2004); *see also* 29 C.F.R. § 541.301(e)(2). To establish the exemption does not apply to a given nurse would require the Court to delve into the duties each performed. An individualized inquiry like this thwarts the purpose of collective action litigation.

For these reasons, described more fully below, this Court should deny Canaday's motion.

## FACTUAL BACKGROUND

### I.   Plaintiff, the Opt-In Plaintiffs, and the 2,500 Putative Plaintiffs Worked Across Dozens of Different Entities, Each Under Separate Operational Control

Defendant The Anthem Companies, Inc. ("Anthem"), an Indiana company, provides back-end, administrative support to Anthem, Inc. subsidiaries, e.g., in the areas of finance, tax, payroll, and HR. (Cole Decl. ¶ 7.) It does not directly provide insurance benefits or services. (*Id.* ¶ 4.)

Anthem, Inc., also headquartered in Indiana, is one of the largest health benefits companies in the country. Through its affiliated health plans, Anthem, Inc. delivers a number of health benefit solutions through a broad portfolio of integrated plans and services, along with a range of specialty products such as life and disability insurance benefits, dental, vision, and behavioral health benefit services, and long-term care insurance and flexible spending accounts. (*Id.* ¶ 5.) Anthem Inc.'s 171 subsidiaries, including 60 regulated insurance companies, employ thousands of individuals in a variety of jobs to provide that broad suite of products and services. (*Id.* ¶¶ 4, 6.) The insurance subsidiaries enjoy operational independence, including, for example, in hiring, structuring their medical necessity review processes, and deciding what tools and systems to use. (*Id.* ¶¶ 9-10.)

Without identifying which subsidiaries they worked for, Canaday seeks to conditionally

certify a collective of salaried nurses working in any of four roles—Nurse Medical Management, Nurse Reviewer, Nurse Reviewer Associate, and Utilization Review Nurse—over a three-year period. (Pl.'s Mem. At 3.) The former three job families each contain four different job titles (e.g., Medical Management Nurse I, II, Senior and Lead). (Smith Decl. ¶ 4 (attached as Ex. A).) Only the Medical Management Nurse job family, however, includes salaried roles. (*Id.* ¶ 6.)

Looking across Anthem, Inc. over a three-year period, these 13 job titles encompass over 3,900 individuals who worked for various subsidiaries in at least 26 states. (*Id.* ¶ 4.) If the hourly Nurse Reviewer and Licensed Utilization Reviewer roles are excluded—consistent with Canaday's decision to limit the collective to salaried employees, but inconsistent with her decision to list the roles in her motion—the group totals approximately 2,500 individuals. (*Id.* ¶¶ 4, 6.)

## II.     Plaintiff's Declarations Capture Only a Miniscule Fraction of the Experiences of the Thousands of Individuals in Her Proposed Collective

Canaday supports her motion with nine form declarations, including her own as well as eight from current opt-in plaintiffs. These declarations cover only 0.3% of the large putative collective that Canaday asks this Court to conditionally certify.

Based on their testimony, three declarants worked as Nurse Medical Management I (Canaday, Elmore, and Gordon), two worked as Nurse Medical Management II (Gainey and Midkiff), and two worked in a Nurse Medical Management role but do not specify at which level (LeFlore and Vialpando). (ECF Nos. 36-5 and 36-6 (hereafter, "Pl.'s Decls.").) None purport to have worked in any other role in the Nurse Medical Management job family (i.e., Senior or Lead).

Moreover, Canaday attempts to place at issue three roles about which she submits no evidence: Utilization Review Nurse, Nurse Reviewer, and Nurse Reviewer Associate. These roles are not classified as exempt; each is paid by the hour. (Smith Decl. ¶ 5.) Including them in a case

alleging exempt misclassification highlights how little Canaday knows.[1]

The declarations upon which Canaday relies are also paper-thin in geographic scope. They reflect that Canaday worked in Tennessee, while the other eight declarants worked in only four of the more than 25 states in which the nurses worked for various subsidiaries: Missouri; Indiana; Virginia; and Georgia. (Pl.'s Decls. at ¶ 3 (same para. for all).) The declarants' testimony is further limited by the fact that all but one worked from home. (*Id.*)

### III.   <u>Significant Differences Exist Among Putative Collective Members</u>

Canaday claims that the registered nurses who held the exempt roles she places at issue all had as their primary duty "conducting utilization reviews (aka 'medical necessity' reviews) for insurance purposes," which consists of "review[ing] medical authorization requests submitted by healthcare providers against pre-determined guidelines and criteria for insurance coverage and payment purposes." (Pl.'s Mem. at 5.) This is a gross oversimplification of duties.

In reality, the actual duties of the nurses in the relevant jobs vary in ways that titles alone do not convey.[2] The jobs are spread across multiple divisions (i.e., Commercial and Specialty Business or Government Business), numerous subsidiaries (e.g., AIM, Amerigroup, or UniCare), and at least 26 states. (Cole Decl. ¶ 8 (attached as <u>Ex. B</u>); Smith Decl. ¶ 7.) They are further stratified by the plan each nurse supports (e.g., National Accounts (private employers), Medicaid, or Medicare) and the setting in which they work, be it from home or an office.

These and other factors drive distinctions in myriad aspects of the nurses' day-to-day duties and experiences. This includes, for example, differences in: **the reviews they conduct and the criteria they evaluate** (*see, e.g.*, Bettencourt Decl. ¶ 15 (UniCare RNs in Massachusetts

---

[1] While Opt-Ins Bishop and Maas state in their form declarations that they worked in Nurse Reviewer, that is wrong. Each worked in the Medical Management Nurse role. (Smith Decl. ¶ 9.)

[2] The positions of Utilization Review Nurse and Medical Management Nurse are divided into four distinct roles (i.e., I, II, Senior, Lead) based on experience and job performance.

evaluating cancer treatment use AIM guidelines) (attached as <u>Ex. C</u>); Thompson Decl. ¶ 18 (on a team at Amerigroup, the guidelines RNs use vary depending on whether nurse is assigned to inpatient, subacute, or outpatient subgroup) (attached as <u>Ex. D</u>); Dunn Decl. ¶ 29 (RNs handling acute inpatient procedures use Milliman's Care Guidelines; nurses handling long-term acute care reviews utilize Medicare Guidelines) (attached as <u>Ex. E</u>); Gaillard Decl. ¶ 13) (attached as <u>Ex. F</u>); **the systems they use** (*compare, e.g.*, Thompson Decl. ¶ 29 (RNs at Amerigroup use FACETS to conduct reviews), *with* Bettencourt Decl. ¶ 25 (RNs at UniCare use ACMP for reviews); **the nature/extent of their interactions with providers and members** (*see, e.g.*, Dunn Decl. ¶ 17 (inpatient RNs communicate with hospitals; post-acute nurses do not)); **their level of supervision** (*compare* Thompson Decl. ¶ 16 (RNs working from home entrusted with "significant freedom to manage their day, their caseload, and member-patient needs"), *with* Bettencourt Decl. ¶ 10 (most UniCare RNs work at the office)); **the state laws they must account for** (Dunn Decl. ¶ 11); and **the training they receive** (Gaillard Decl. ¶ 8 (some receive internal trainings that others do not)).

For example, the Nurse Medical Management nurses on Wendy Linscott's team exclusively handle medical necessity reviews for emergency inpatient admissions for a subset of Anthem's Medicare Advantage population. (Linscott Decl. ¶ 15 (attached as <u>Ex. G</u>).) Each is dedicated to one or more high-volume hospitals, which allows them to establish rapport, trust, and familiarity needed to work efficiently in emergency situations. (*Id.*¶¶ 8, 25.) For the same reason, at certain high-volume facilities, the RNs have direct access to electronic medical records (EMR) to pull information they deem relevant to a review. (*Id.* ¶ 24.) Presently, the nurses use Milliman Care Guidelines, which are published by a third-party and provide a "best practice" approach to care, but prior to November 2018 nurses in Tennessee used Interqual, a different set of guidelines. (*Id.* ¶ 17.) By sharp contrast to all of this, the RNs on Mary Pegg's team at HealthLink, a subsidiary of Anthem, Inc., work all types of cases, are not assigned to a particular plan, provider, or type of

benefit, and do not have direct EMR access. (Pegg Decl. ¶ 11 (attached as Ex. H).)

The nurses who Canaday purports to include in this lawsuit also differ from her with respect to the judgment calls and discretion they make and apply. Canaday states that "if the criteria in the guidelines are not met," then all she can do is escalate the request to the Medical Director, who is a doctor. (Pl.'s Mem. at 6.) This stands in contrast with other registered nurses who Canaday purports to represent. For instance, Nurse Medical Management nurses at UniCare have authority to approve requests "even if applicable guidelines are not satisfied…if, in the nurse's clinical judgment, the request is medically necessary." (Bettencourt Decl. ¶¶ 16, 23; *see also* Linscott Decl. ¶ 27 (medical necessity decisions factor in "more than just guidelines").)

Nurses vary in other ways that are not traceable to the entity they work for, the division in which they reside, or the plan they support. For instance, nurses in some titles train and educate other RNs and oversee and assess their performance. (*See, e.g.*, Linscott Decl. ¶ 10 (some Seniors spend more time mentoring and training); Dunn Decl. ¶ 13 (some Leads act as assistant managers); Thompson Decl. ¶ 13 (lead functions handled by Lead or Senior, depending on team) Pegg Decl. ¶13.) Also, nurses in some divisions receive productivity bonuses that are not available everywhere and not available at all times. (*See, e.g.*, Dunn Decl. ¶ 23; Linscott Decl. ¶ 14; Pegg Decl. ¶ 19.)

Canaday ignores these sorts of distinctions, despite the fact—or perhaps due to the fact—that they distinguish the day-to-day experiences of those she purports to include in this lawsuit and are directly relevant to the exemption analysis that is at the heart of her misclassification claims.

## LEGAL ARGUMENT

This Court should decline Plaintiff Canaday's invitation to convert her case into a nationwide collective action comprising thousands of individuals across titles, locations, and companies. For starters, Canaday's motion fails because the Court lacks personal jurisdiction over out-of-state putative plaintiffs and because her evidence is fatally deficient in multiple respects.

Even setting these flaws aside, however, Canaday fails to carry her burden of demonstrating that she is "similarly situated" with the thousands of individuals she purports to represent.

I.      **No Nationwide Class Can Exist Because This Court Lacks Personal Jurisdiction Over Out-of-State Plaintiffs**

As detailed in Anthem's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 52), this Court lacks jurisdiction over claims of plaintiffs who do not live in or work for Anthem in Tennessee.[3] Out-of-state nurses comprise the vast majority of the putative collective. (Smith Decl. ¶ 7.) Canaday's request to notify them about the opportunity to join this case is improper.

In *Bristol-Myers Squibb Co. v. Superior Court of California*, the U.S. Supreme Court that for each claim asserted by each plaintiff in a multi-plaintiff case, "there must be an 'affiliation between the forum and the underlying controversy, principally, an activity or occurrence that takes place in the forum State.'" 137 S. Ct. 1773, 1781 (2017).

Multiple federal courts—including several in this circuit—have since confirmed that *Bristol-Myers* applies to opt-in plaintiffs in an FLSA collective action. These decisions establish that courts lack jurisdiction over claims of out-of-state FLSA plaintiffs in a putative collective action (except where general jurisdiction over a defendant exists, which it does not here). *See e.g.*, *Rafferty v. Denny's, Inc.*, No. 5:18-cv-2409, 2019 WL 2924998, at *7 (N.D. Ohio July 8, 2019) (holding that exercising personal jurisdiction over out-of-state collective action members would violate due process); *Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 850 (N.D. Ohio 2018) (holding "that *Bristol–Myers* applies to FLSA claims, in that it divests courts of specific jurisdiction over the FLSA claims of non-Ohio plaintiffs"); *Turner v. UtiliQuest, LLC*, Case No. 3:18-cv-00294, *6 (M.D. Tenn. July 16, 2019) (adopting *Maclin* and ruling that "the Court has no personal jurisdiction over non-Tennessee plaintiffs") (attached as Ex. I); *see also Roy v. FedEx*

---

[3] Anthem incorporates by reference the arguments set forth in its Motion Dismiss.

*Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 62 (D. Mass. 2018).

In light of *Bristol-Myers* and the persuasive intra-circuit authority interpreting it, this Court should deny Canaday's motion insofar as she seeks to distribute notice to individuals who did not work and do not live in Tennessee. Those individuals and their claims have no connection to Anthem's Tennessee conduct, and this Court lacks the general jurisdiction over Anthem (whose headquarters and principal place of business is in Indiana) that might otherwise permit it to adjudicate out-of-state claims. *See Goodyear Dunlop Tires Ops. v. Brown*, 564 U.S. 915, 925 (2011). Because allowing those out-of-state individuals to pursue claims in this case would violate Anthem's due process rights, Canaday's request to invite them to do so should be denied.

## II.     Conditional Certification is Not Automatic, But Rather is a Discretionary Tool Reserved For "Appropriate Cases"

Courts have discretion, "in appropriate cases," to facilitate an opt-in notice process and conditionally certify an FLSA claim to proceed on a collective basis where doing so allows for "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffmann-LaRoche v. Sperling*, 493 U.S. 165, 169-170 (1989) (citing 29 U.S.C. § 216(b)). Conditional certification is not, however, a "rubber stamp." *Steffen v. Contract Sweepers & Equip., Co.*, 2018 WL 1755332, at *4 (S.D. Ohio 2018). This is particularly true where, as here, the proposed collective is massive and diverse, and the grounds for certification rest on self-serving and formulaic declarations from relative few plaintiffs. *See id*.

To obtain conditional certification, Canaday must make a modest *factual* showing that she and the thousands she purports to shoehorn into her lawsuit are victims of a common unlawful policy or plan. *See O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009) ("[P]laintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs."); *Fairly v. Karn Auto. Prod., Inc.*, 2018 WL 4261199, at *1 (W.D. Tenn. 2018)

("At the notice stage, many courts require a modest factual showing that the named plaintiff and the putative plaintiffs together were victims of a common policy or plan that violated the law."). Mere allegations are not enough. *Tyler v. Taco Bell Corp.*, 2016 WL 3162145, at *4 (W.D. Tenn. 2016); *Michelle Powers v. Blessed Homecare, LLC, et al.*, 2019 WL 4450514, at *2 (M.D. Tenn. 2019) ("[C]onclusory allegations are insufficient to support conditional certification. This is true even if the conclusory allegations are asserted…in a (sworn) plaintiff's declaration."). Where evidence does not show an unlawful policy or practice affecting putative collective members, courts deny conditional certification. *See e.g.*, *Tyler*, 2016 WL 3162145, at *5-6 (denying conditional certification in a misclassification case, except for the two locations where plaintiff worked); *Ratcliffe v. Food Lion, LLC*, 2019 WL 3857979, at *5 (M.D. Tenn. 2019).

III.   **This is Not an Appropriate Case for Conditional Certification Because Plaintiff Fails to Demonstrate That She is "Similarly Situated" to Other Putative Plaintiffs**

Canaday stakes her motion on nine template declarations (including her own) and a handful of online job postings. This "evidence" is fatally deficient because: (i) Canaday submits only one relevant declaration (her own); and (ii) it does not establish a basis in personal knowledge to draw assumptions about the day-to-day duties of the non-parties whom Canaday places at issue. Further, even if this Court lends credence to Canaday's evidence, it reveals she is not "similarly situated" to the numerous individuals she seeks to insert into the litigation.[4]

A.   **Conditional Certification is Improper Because Plaintiff's Evidence is Deficient**

1.   *Plaintiff Submits Only One Relevant Declaration: Her Own*

Only one of Canaday's nine declarations has any relevance to her motion: her own. All others describe a given RN's experience working in a state other than Tennessee. None profess

---

[4] Canaday's proposed collective is larger than all but eight active MDLs. *See* Judicial Panel on MDL—MDL Statistics Rpt., *available at* http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_by_Actions_Pending-September-16-2019.pdf (last visited Oct. 15, 2019).

any connection to Tennessee or knowledge about nurses who worked there. (*See* ECF No. 36-6.)

This Court should ignore the out-of-state declarations. As detailed in Section I, the Court lacks personal jurisdiction over the claims of out-of-state nurses. The experiences of individuals over whom this Court lacks jurisdiction and who lack relevant personal knowledge are irrelevant to the conditional certification inquiry. *See Chavira v. OS Restaurant Servs., LLC, et al.*, 2019 WL 4769101, at *8 (D. Mass. 2019) ("Even if the Court were to consider the affidavits submitted by individuals who cannot opt-in to the putative collective action, only Plaintiff's affidavit speaks to practices at Outback Steakhouse locations in Massachusetts.").

The only work experience potentially relevant to Canaday's claims is work in Tennessee, and the only testimony on that point is her own declaration. (ECF No. 36-5.) Notably, that declaration says nothing about Canaday's similarity to other Tennessee nurses.[5] *See, e.g.*, *Heath v. Google Inc.*, 215 F. Supp. 3d 844, 857-58 (N.D. Cal. 2016) ("Heath does not even provide a single declaration beyond his own. Although this is not dispositive, it is persuasive."); *Eng-Hatcher v. Sprint Nextel Corp.*, 2009 WL 7311383, at *5 (S.D.N.Y. 2009) (denying conditional certification where plaintiff "attempt[ed] to impute her own limited experience to a nationwide class"). Absent more, Canaday shows nothing at all.

### 2. *Plaintiff and the Other Home-Based Declarants Fail to Establish Anything About the Day-to-Day Duties of Other Individuals*

Canaday's declarations also are critically deficient because they offer no basis to conclude that the declarants have personal knowledge about the duties or experiences of any of the numerous individuals who she seeks to include in this case. If anything, they undercut any such presumption.

The purported glue binding Canaday's claim and experiences to hordes of putative

---

[5] This Court should not allow Canaday to file additional declarations with her reply as they would be untimely, prejudicial, and improper. Canaday was fully aware of Anthem's personal jurisdiction argument; indeed, she addressed it in her opening brief. (Pl.'s Mem. at 12-13.)

plaintiffs across the country is each declarant's assertion that, based on "personal knowledge, observations, and experiences," they "believe that other" nurses, seemingly irrespective of job title or location, "perform similar job duties as [they] do and also do not receive overtime pay." (Pl.'s Decls. ¶ 15 (same para. for all.)) But belief is not knowledge. And the declarations lack the latter. They never, for instance, say when or where the declarants observed other nurses carrying out their duties. That's not surprising given that eight of the nine declarants worked from home. (*Id.* at ¶ 3.)

Declarations supporting conditional certification "must...be based on personal knowledge and seem reasonably likely to reflect information that the employee would have learned in the course of his or her employment." *Medley v. S. Health Partners, Inc.*, 2017 WL 3485641, at *7 (M.D. Tenn. 2017); *see also White v. MPW Indus. Servs.*, 236 F.R.D. 363, 369 (E.D. Tenn. 2006) ("[A]ffidavits submitted at the notice stage must be based on...personal knowledge...otherwise, [they] would not be any more probative than the bare allegations in the complaint, and the requirement of factual support would be superfluous.").

Canaday's declarations do not establish that the declarants have personal knowledge about the many other current and former nurses she seeks to involve in this lawsuit. They suggest instead that the declarants know little about putative collective members. Only one of the nine declarants, Jean Elmore, purports to have worked in an "Anthem office." The others worked from home. (Pl.'s Decls. ¶ 3 (same para. for all).) That some claim to have initially trained with other nurses, and some name-drop, does not establish personal knowledge of similarities in day-to-day duties among putative plaintiffs. *Tyler*, 2016 WL 2344229, at *4 (finding "training materials" did not support conditional certification, nor did testimony that putative plaintiffs "completed the same training").

### 3. *Online Job Postings Do Not Evidence a Common Unlawful Policy or the Similar Situation of All Putative Plaintiffs*

In addition to irrelevant declarations, Canaday papers the docket with 70 pages of online job postings. These, she concludes without analysis, show that Anthem misclassified all nurses

working anywhere across the country in the Utilization Review Nurse, Medical Management Nurse, Nurse Reviewer, and Nurse Reviewer Associate job families.

Canaday's reliance on job postings is an improper attempt to have it both ways. The postings list duties that Canaday and the other declarants suggest they did not perform. For instance, the Nurse Medical Management I posting states that the role is responsible for, among other things, "assessing the medical necessity" of various services, "steering members to appropriate providers, programs or community resources," "collaborat[ing] with providers to assess members' needs for early identification of and proactive planning for discharge," and "facilitat[ing] member care transition through the healthcare continuum...." (ECF No. 36-9 at 3.) In her declaration, however, Canaday says nothing about assessing anything, collaborating with anyone, or planning in any regard. If Canaday concedes that the postings accurately describe her role, then she should withdraw her sworn declaration, which paints the picture of a far narrower and more routine job. If, however, she disputes the postings' accuracy, then she cannot at the same time rely on them as purported evidence of duties that she and all others uniformly performed.

The reality, of course, is that the job postings do nothing to advance Canaday's burden. They do not reflect an unlawful policy that binds her to anyone else, nor do they describe *how* or *to what extent* any given nurse performs any listed (or unlisted) duties, which is central to the claim that she and others were misclassified. If job postings sufficed to warrant conditional certification, then the relevant standard would be reduced from lenient to imaginary. This sort of "evidence" does nothing to nudge the conditional certification needle and should be disregarded. *See Tyler*, 2016 WL 2344229, at *4 ("Taco Bell's job description, training materials, corporate policies, and compensation method for [exempt managers] do not support conditional certification because the[y] facially comply with the FLSA."); *Ratcliffe, LLC*, 2019 WL 3857979, at *2 (holding that job posting proffered in support of plaintiff's conditional certification motion was "not evidence

of Defendant requiring [exempt mangers] to engage in primarily non-managerial duties").

**B.      Conditional Certification is Improper Because Plaintiff Fails to Show a Common and Unlawful Policy or Plan That Binds the Proposed Collective**

It is Canaday's burden to adduce facts showing that she and the putative collective members were subject to a common policy or plan that violates the FLSA. Her failure to do so is yet another reason that her motion should be denied.

At the most basic level, Canaday claims she is similarly situated to each member of the legion of nurses she purports to represent because Anthem incorrectly classified them as exempt. "Merely being classified as exempt," however, does not violate the FLSA and, thus, cannot bind a collective together. *Oetinger v. First Residential Mortg.*, 2009 WL 2162963, at *3 (W.D. Ky. 2009). Indeed, the FLSA contains a multitude of potentially relevant exemptions. One of them, in fact, plainly states that "registered nurses who are registered by the appropriate State examining board generally meet the duties requirements for the learned professional exemption." *See* 29 C.F.R. § 541.301(e)(2). Canaday and the testifying opt-ins are all RNs. (Smith Decl. ¶ 8.)

Against that backdrop, the classification of registered nurses as exempt cannot, standing alone, qualify as an unlawful policy or practice justifying an FLSA collective action. *See, e.g.*, *Oetinger*, 2009 WL 2162963, at *3 ("[C]ompanies may indeed apply company-wide policies to their employees, but these policies must cause the alleged FLSA violation for the policy to be considered as a factor in determining whether employees are 'similarly situated' for purposes of bringing a collective action."). There has to be something more, and that something more has to be both unlawful and common to the entirety of the putative collective.

Canaday's evidence amounts to something less—it does not establish an illegal practice with respect to any one individual, much less the entire putative collective. The job postings do not support certification because they do not, on their face, violate the FLSA. *See Tyler*, 2016 WL 2344229, at *4; *Caballero v. Kelly Servs.*, 2015 U.S. Dist. LEXIS 137475, at *12-13 (S.D. Tex.

2015) ("Similar job descriptions are insufficient to support allegations of a defendant employer's unwritten national policy regarding overtime timekeeping practices.")

The same goes for the declarants' vague, cookie-cutter testimony. Take, for example, the form declaration of Opt-In Plaintiff Winifred Midkiff, a registered nurse. (Doc. 36-6 at 20.) Even if the Court accepts her testimony as true, it establishes only that:

1. She "primarily worked [from] home" as a Medical Management Nurse II. (*Id.* ¶¶ 2-3.)

2. She did not provide "'bed-side' nursing in a clinical setting." (*Id.* ¶ 4.)

3. She "review[ed] medical authorization requests submitted by healthcare providers against pre-determined guidelines and criteria," with a focus on inpatient requests for Amerigroup, an Anthem subsidiary. (*Id.* ¶¶ 5-6.)

4. She had authority to approve requests that she determined met guidelines. For any that did not, she referred the request to the Medical Director, who is a doctor. (*Id.* ¶ 8.)

5. She "used Anthem's electronic case management system, standardized guidelines and criteria, and Anthem's policies and procedures." (*Id.* ¶ 7.)

6. She was held to "productivity goals and quotas" and "regularly tested" on "the criteria in the guidelines and [her] ability to apply [them] consistently." (*Id.* ¶ 9.)

7. She was "paid a salary," "treated as 'exempt,'" and "worked in excess of 40 hours" but "did not receive overtime pay…" (*Id.* ¶¶ 10-13.)

8. She "trained with other Nurse Medical Management IIs when Defendant trained [her] to do her job" and observed "she was being trained on the same topics…." (*Id.* ¶ 14.)

9. She "believe[s] that other[s]" in her title, including seven individuals she names, "performed similar job duties…and also did not receive overtime pay." (*Id.* ¶ 15.)

Even if taken as true, this does not establish that Midkiff was misclassified pursuant to an unlawful policy or plan. What Midkiff speaks to does not disqualify her from applicable exemptions like the professional[6] or administrative exemption.[7] For instance, nothing in the former

---

[6] The professional exemption applies to salaried employees whose primary duty requires advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction. *See* 29 C.F.R. § 541.300; *id.* at § 541.301(e)(2) ("Registered nurses…generally meet the duties requirements for the learned professional exemption.").

[7] The administrative exemption applies to salaried employees whose primary duty is office or non-manual work directly related to the management or general business operations of the employer or

exemption, which expressly applies to registered nurses, limits the exemption to "bed-side" care. *See* 29 C.F.R. § 541.301(e)(2). Nor does Midkiff's claim that she used guidelines or received training for assessing requests for inpatient treatment requests reflect an unlawful practice. *See* 29 C.F.R. § 541.704 (using "guidelines or other established procedures containing or relating to highly technical, scientific…or other similarly complex matters that can be understood or interpreted only by those with advanced or specialized knowledge or skills" *does not* jeopardize exempt status); *see also Tyler*, 2016 WL 2344229, at *4 (finding that "training materials [and] corporate policies" did not support conditional certification, nor does testimony that putative plaintiffs "completed the same training, were subject to the same guidelines, received the same benefits, and had 'pretty [much] the same' responsibilities and accountabilities").

Midkiff's testimony—and the near-identical testimony of the other eight declarants—is also notable for what it does not say. She never says, for example, that she exercised no discretion or judgment when assessing medical files, a key inquiry under the above-mentioned exemptions. Nor does she testify that her training as a registered nurse was unnecessary to her job, which is of natural importance to the professional exemption. Indeed, Midkiff and the other eight doppelganger declarants say *nothing* about their judgment or training—they instead ask this Court to draw inferences and make assumptions (and then to extrapolate those inferences and assumptions across Canaday's massive and diverse proposed collective).

At bottom, Canaday presents no evidence that she or any other declarant was misclassified under the FLSA, much less that each nurse in her proposed collective was misclassified for the *same reason*. "While the burden for conditional certification is low, it requires some showing that other[s] may have been similarly misclassified." *Tyler*, 2016 WL 2344229, at *5. Because Canaday

---

its customers and whose primary duty "includes" the exercise of discretion and independent judgment with respect to significant matters. *See id.* at § 541.200.

fails to establish a sound basis for her claim that all nurses in her proposed collective were misclassified pursuant to a common unlawful policy or plan, conditional certification is improper.

**C.      Conditional Certification is Improper Because Plaintiff and the Putative Plaintiffs Are, in Fact, Not "Similarly Situated" to One Another**

Not only does Canaday rely on fatally deficient evidence and fail to demonstrate a common unlawful plan to bind her proposed collective together, her attempt to homogenize herself, the opt-in plaintiffs, and the several thousand individuals comprising the collective falls flat. The evidence reveals, in fact, critical dissimilarities among those putative collective action members.

While the nine declarations Canaday relies on are boilerplate, the few deviations among them highlight that even the declarants are not as similar to one another as Canaday suggests. For example, the declarants worked on numerous different plans. While Canaday worked on a plan servicing Tennessee Medicaid members of TennCare, Opt-In Plaintiffs Bishop and Gainey conducted utilization reviews for members of HealthLink and BlueCross BlueShield, respectively. (ECF No. 36-5 at 2; ECF No. 36-6 at 1 and 9.) By contrast, Opt-In Leflore conducted reviews for "members of Integrated Health Model plans." (ECF No. 36-6 at 15.) As noted in the Factual Background section and in Anthem's supporting declarations, plans differ with respect to the benefits offered, guidelines applied, applicable regulations, and in various other regards.

Further, Canaday's declarations reveal subtle but important variations in the types of benefits and services for which the nine declarants conducted medical necessity reviews. For example, while Canaday and Opt-In Maas "review[ed] prior authorization requests for outpatient healthcare benefits and/or services," Opt-In Midkiff "primarily reviewed requests for inpatient healthcare benefits" and opt-in Vialpando "reviewed Medicare supplement plan requests for emergency inpatient healthcare benefits.... " (ECF No. 36-5 at 2; ECF No. 36-6 at 18, 21, and 23.) By contrast, Opt-In Bishop "review[ed] requests for inpatient healthcare benefits and/or services, medical service tests, and [d]urable [m]edical [e]quipment requests." (ECF No. 36-6 at 3.)

These differences are not trivial. Acute in-patient reviews, for example, use different guidelines than specialty benefits. (Linscott Decl. ¶¶ 17-18.) And maternal-child reviews bear no relation medically to reviews handled by a subacute team member dealing with nursing homes, to say nothing of the inpatient team dealing with neo-natal intensive care admissions. (Thompson Decl. ¶¶ 10-11; *see also id.* ¶ 23 ("Adult care reviews differ from maternal-child reviews.").) Indeed, "different subgroups of UM nurses use different guidelines to assess the medical necessity of requests made in different medical subject matter areas." (*Id.* ¶ 18.) "[E]ven within a given subgroup, certain procedures or reviews call for a nurse to reference a specific guideline that other nurses on the team are not regularly consulting." (*Id.*)

Compounding those differences are variations in regulations that apply to a given review. Those vary by type of plan (Medicare vs. Medicaid vs. commercial), and the nature of the service being reviewed. An acute in-patient hospital admission review for a Medicare patient must be completed within 24-hours, for example, while a review for some durable medical equipment might be able to wait up to seven days. (Pegg Decl. ¶ 6 (attached as Ex. H.)

These differences disprove Canaday's claims that the registered nurses she would represent are similarly situated under the FLSA. Specifically, she suggests repeatedly that she and these thousands of other nurses all conducted medical necessity reviews, used the same systems, followed the same guidelines and criteria, and received the same training. (Pl.'s Mem. at 5, 9.) The declarants do not testify to how much time each spent on these reviews or specify what, if any, other duties each performed. (*See* Pls.' Decls.) Not one of them identifies the specific guidelines, criteria, policies, or procedures used, specifies the manner or frequency of their use, or addresses the impact any had on a nurse's exercise of clinical judgment. (*Id.*)

Canaday's decision to overlook these details is unsurprising. As detailed in Section III of the Factual Background section, *supra*, the evidence reflects that nurses across her putative

17

collective use different systems, assess different criteria, and are subject to varying levels of supervision based on myriad variables, such as the direct employers for which they work, the plans they support, the reviews they specialize in, and the setting in which they work. (*Compare* Bettencourt Decl. ¶ 25, *with* Thompson Decl. ¶ 29 (nurses in Massachusetts working for UniCare use a different system than Tennessee nurses conducting reviews for Amerigroup Ameriadvantage Medicare customers)). And, as Canaday's supervisor explains, nurses responsible for in-patient medical necessity reviews use different guidelines than nurses tasked with sub-acute reviews. (Thompson Decl. ¶ 18.) Icing the cake of differences, each nurse's level of supervision varies depending, at least in part, on whether they work from home. (*See generally* Dunn Decl. ¶ 18.)

These differences matter, which is why Canaday looks past them by describing the experiences of the nine testifying plaintiffs only at a miles-high level—a level at which she might falsely insinuate that using *any* guideline is equivalent to using *the same* guideline; that being held to *any* productivity goals is equivalent to being held to *the same* goals; that receiving *any* training is equivalent to receiving *the same* training; and that performing *any* type of medical necessity review is equivalent to handling *the same* reviews. In other words, Canaday attempts to prove similarity by ascending as high as it takes to surpass obvious differences across her proposed nationwide collective so that its members blend together. There is no reason to turn a blind eye to the realities of the positions at issue solely in the name of conditional certification.[8]

---

[8] Similar realities doomed the plaintiffs' class action claims in *Ruggles v. WellPoint, Inc.*, 272 F.R.D. 320 (N.D.N.Y. 2011), a case filed by Canaday's counsel on behalf of a putative class of allegedly misclassified registered nurses against WellPoint, Inc., before it became Anthem. (Pl.'s Mem. at 11.) After discovery on class-related issues, the court denied Rule 23 class certification, finding "important variation" on issues critical to the exemption analysis, "such as what activities a nurse engages in, whether such work requires advanced knowledge in a field of science or learning, what guidelines or tools a nurse employs, how often she consults them, and in what manner she does so," as well as "the amount of time spent performing exempt work; [and]…relative freedom from direct supervision…." *Id.* at 339.

In sum, Canaday fails to demonstrate that she is similarly situated with the current opt-in plaintiffs or the several thousand non-party individuals comprising her putative collective. The evidence reflects, in fact, that they are different with respect to the very traits that Canaday claims bind them together. This, combined with Canaday's failure to demonstrate a common unlawful policy or plan tying her putative collective together, provides ample reason to deny her motion.

## IV.   In the Event That This Court Authorizes Notice (Which it Should Not), it Should Reject Plaintiff's Proposed Notice and Invasive Method for Distributing It

"In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche*, 493 U.S. at 174. The content and distribution plan for the notice Canaday proposes (ECF No. 36-3) breaches this well-established maxim and is misleading, one-sided, and improper. For example:

- Canaday's proposal to send notice *four* times—First Class Mail, email, posting on Anthem's intranet/dashboard, and a reminder—is intrusive, redundant, and risks the appearance of Court-endorsed pressure to join. One First Class Mail mailing suffices.[9]

- Canaday's request to send a reminder notice is unnecessary and runs the risk of suggesting judicial encouragement to join. Courts routinely deny requests to send reminders.[10]

- Adorning the notice with the full case caption risks implying Court-endorsement of Canaday's claims. It should be deleted.[11]

- Canaday's proposed notice fails to inform potential plaintiffs of the realities of litigation, e.g., they may have to answer written discovery, sit for a deposition, and appear for trial. This is essential to allow them to make an informed decision about whether to join.[12]

---

[9] *Lindberg v. UHS Lakeside*, 761 F. Supp. 2d 752, 765 (W.D. Tenn. 2011) ("In FLSA cases, first-class mail is generally considered to be the 'best notice practicable'…."); *Mathews v. ALC Partner*, 2009 WL 2591497, at *9 (E.D. Mich. 2009) (other methods "unnecessary and unduly intrusive").

[10] *See, e.g., Knispel v. Chrysler Group LLC*, 2012 WL 553722, at *7-8 (E.D. Mich. 2012) ("[R]eminder notice is unnecessary. The purpose of the notice is to inform potential opt-in[s] of their rights. Once they receive that information, it is their responsibility to act as they see fit.").

[11] *Id.*

[12] *See, e.g., Ganci v. MBF Inspection Servs., Inc.*, 2016 WL 5104891, at *7 (S.D. Ohio 2016) ("[T]he notice shall include a short statement that opt-in plaintiffs may be required to participate

- Likewise, the notice fails to advise recipients that costs may be assessed against them if Anthem prevails. This information is essential to informed decision-making.[13]

- Canaday's proposed collective includes the catch-all phrase, "similar job titles who were paid a salary and treated as exempt…." This is vague, and the Court should reject it.[14]

These are just a few of Anthem's objections. In the event that this Court grants Canaday's motion, it should reject her proposed notice and proposed plan for distributing it and direct the parties to propose a mutually agreeable notice and plan within 30 days of the Court's Order.[15]

## CONCLUSION

For the reasons detailed above, this Court should deny Plaintiff's Motion for Conditional Certification. Should the Court grant the motion, it should direct the parties to work together to draft a fair and neutral notice, consent form, and process for distributing the same.

Date: October 16, 2019 (CDT)        Respectfully submitted,

SEYFARTH SHAW LLP

s/ Brett C. Bartlett
Brett C. Bartlett
Georgia Bar No. 040510
bbartlett@seyfarth.com
Kevin M. Young
Georgia Bar No. 183770
kyoung@seyfarth.com
Jade M. Gilstrap
Georgia Bar No. 992400
jgilstrap@seyfarth.com
SEYFARTH SHAW LLP

---

in written discovery and that they may be required to appear for deposition and/or trial.").

[13] *See, e.g.*, *Whitlock v. Sevier Cnty.*, 2019 WL 2744195, at *1 (E.D. Tenn. 2019) ("Because Plaintiffs' proposed notice does not include a warning regarding the possibility that they may be liable for Defendant's defense costs if this suit is unsuccessful, the Court rejects [it]."); *Stephens v. Sopapillas*, LLC, 2019 WL 1460878, at *6 (M.D. Tenn. 2019) (same).

[14] *See e.g.*, *Rogers v. Webstaurant, Inc.*, 2018 WL 4620977, at *2 (W.D. Ky. 2018) ("Regarding other employees in 'any other non-exempt position,'… [plaintiff] has provided insufficient factual support to merit conditional certification for such a catch-all class."); *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340 (E.D.N.Y. 2012) (rejecting "persons in similar positions").

[15] If the Court does not order the parties to proceed in this manner, then Anthem requests the opportunity to address in more detail the inadequacies of the proposed notice and process.

1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309-3958
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

COUNSEL FOR DEFENDANT

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| LAURA CANADAY, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 1:19-CV-01084-STA-JAY |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| THE ANTHEM COMPANIES, INC., | ) ) | |
| Defendant. | ) ) ) | |

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 16, 2019 (CDT), I caused a true and correct copy of the foregoing

**Defendant's Response to Plaintiff's Motion for Conditional Certification and Court-**

**Authorized Notice** to be served on the following attorneys of record via email:

Rachhana T. Srey
srey@nka.com
Neil Pederson
npederson@nka.com
4600 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402


s/ Brett C. Bartlett
One of Counsel for Defendant