## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE

LAURA CANADAY, individually and on
behalf of all others similarly situated,

        Plaintiff,                                          Case No. 1:19-CV-01084-STA-jay

v.

THE ANTHEM COMPANIES, INC.,

        Defendant.

___

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND COURT-AUTHORIZED NOTICE**
___

**INTRODUCTION**

Curiously buried in footnote 8 of its opposition, Defendant cites a case titled *Ruggles v. WellPoint, Inc.*, which was handled by Plaintiff's counsel in this case. *Ruggles* is noteworthy for several reasons. First, *Ruggles* involved the same defendant in this case before WellPoint, Inc. merged with, and later became, Anthem. Second, *Ruggles* involved the same utilization review nurse positions at issue here. Third, and most importantly, the *Ruggles* court granted FLSA conditional class certification and authorized notice to be sent to all putative collective members nationwide, and doing so, rejected all of the same arguments Defendant repeats here, as reflected in the attached Order.[1] This Court should reach the same decision reached in *Ruggles* over ten years ago involving the same company and same job position. Moreover, like the *Ruggles* court recognized, at this pre-discovery stage, courts do not evaluate the merits of the claims or defense, engage in individualized inquiries, or require employees be "identically situated." Plaintiff must only make a modest factual showing that she and the putative collective are similarly situated for notice to issue. Plaintiff has done precisely that and her motion should be granted.

**ARGUMENT**

Defendant claims that "only the Medical Management Nurse job family . . . includes salaried roles" and that its Nurse Reviewers, Nurse Review Associates, and Utilization Review Nurses were all paid hourly rather than by salary. (Def.'s Br. 3–4, ECF No. 53.) In light of this, Plaintiff agrees to modify and limit the collective she seeks to conditionally certify to the following: "All persons who worked as Medical Management Nurses who were paid a salary and

---

[1] *See* Ex. 1. The district court's denial of Rule 23 certification in *Ruggles* is of no moment as the U.S. Supreme Court and this Circuit has recognized, Rule 23 actions are "fundamentally different" from FLSA collective actions. *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1524 (2013); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrog. on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

treated as exempt from overtime laws and were primarily responsible for performing medical necessity reviews for Defendant at any time since three years prior to the filing of this Complaint." The approximately 2,500 individuals who fit this collective definition should promptly be notified of this lawsuit and given the opportunity to join.

**I.      BRISTOL-MEYERS SQUIBB IS INAPPLICABLE.**

As Plaintiff anticipated, Defendant relies on *Bristol-Myers Squibb Co. v. Superior Court of California* to argue that out-of-state nurses in the putative collective are not entitled to notice. Defendant's argument fails because *Bristol-Myers* does not apply to FLSA collective actions, and thus, putative collective members across the country are entitled to notice of this lawsuit.[2]

The *Bristol-Myers* decision interpreted due process under the Fourteenth Amendment, which guarantees due process of law against "any State." *See* U.S. Const. amend. XIV. A different amendment – the Fifth Amendment – guarantees due process of law as against the federal government. *See* U.S. Const. amend. V. The U.S. Supreme Court explicitly carved out federal actions from its holding by stating, "since our decision concerns the due process limits on the exercise of specific jurisdiction by a *State*, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a *federal court*." *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 137 S. Ct. 1773, 1783–84 (2017) (emphasis added). Because the Supreme Court left this question for another day, this Court should not extend this holding to a federal court's power under the Fifth Amendment. *See Garcia v. Peterson*, 319 F. Supp. 3d 863, 880 (S.D. Tex. 2018); *see also Thomas v. Kellogg Co.*, 2017 WL 5256634, at *1–2 (W.D. Wash. Oct. 17, 2017) (finding it was "not at all clear that *Bristol-Myers* even applies to this case, filed in federal district court" and denying motion to dismiss out-of-state plaintiffs).

---

[2]Defendant also moved to dismiss three non-Tennessee opt-in Plaintiffs. (ECF No. 52.) Plaintiff incorporates by reference her arguments in her Opposition to Defendant's Motion to Dismiss.

Moreover, Defendant mischaracterizes *Bristol-Myers*' holding as applying to each plaintiff "in a multi-plaintiff case." (Def.'s Br. 9, ECF No. 53.) The Supreme Court analyzed personal jurisdiction in the context of a state law mass tort action only. *See Bristol-Myers Squibb Co.*, 137 S. Ct. at 1778. Courts across the country have declined to apply the case to Rule 23 class actions and FLSA collective actions. *See, e.g.*, *Meo v. Lane Bryant, Inc.*, 2019 WL 5157024, at *12 (E.D.N.Y. Sept. 30, 2019) (refusing to deny conditional certification because of out-of-state FLSA collective members); *Gibbs v. MLK Express Servs., LLC*, 2019 WL 1980123, at *16 (M.D. Fla. Mar. 28, 2019) (finding that *Bristol-Myers* is as inapplicable to FLSA collective actions as it is to Rule 23 class actions), *report and recommendation adopted in part, rejected in part on other grounds*, 2019 WL 2635726 (M.D. Fla. June 27, 2019); *Garcia*, 319 F. Supp. 3d at 880 (citing cases and declining to extend *Bristol-Myers* to opt-in plaintiffs in FLSA collective action). Again, this Court should not alter its precedent and should decline to apply *Bristol-Myers* here.

## II.  NATIONWIDE CONDITIONAL CLASS CERTIFICATION IS APPROPRIATE.

Plaintiff has supported her motion with the allegations in her Complaint, nine declarations from nurses located all around the country, and Defendant's own job postings. This case, like *Ruggles*, is also appropriate for nationwide conditional class certification.

### A.  Plaintiff's Evidence Establishes That Similarly Situated Employees Exist.

Relying on *Bristol-Myers*, Defendant asks this Court ignore Plaintiffs' declarations other than Plaintiff's own declaration because the other declarants did not work in Tennessee. (Def.'s Br. at 9, ECF No. 53.) But, again, its arguments lack merit. *See, supra,* § I. As for arguments about the declarants' purported lack of personal knowledge about anyone but themselves, they also fail. First, the conditional certification standard does not require Plaintiff to have personally observed with her own two eyes nurses carrying out their duties. The similarities between Plaintiff and the putative collective may be established by comparing and contrasting the statements Plaintiff makes

3

with the statements the declarants make. For example, Plaintiff asserts that her primary job duty was to conduct utilization reviews (also known as "medical necessity reviews"), that she was paid a salary, that she worked overtime hours and was not paid for it, and that Defendant classified her as exempt. (ECF No. 36–5.) The declarants also attest that that their primary job duty was to conduct utilization reviews, that they were paid a salary, that they worked overtime hours which they were not paid for, and that Defendant classified them as exempt.[3] (ECF No. 36–6.) The fact that these declarants all speak to shared experiences, regardless of the alleged differences between them is the binding glue, not merely an assertion about whether they have "personal knowledge" concerning others, as Defendant contends. (Def.'s Br. 10, ECF No. 53.) Second, the declarations supply ample grounds from which this Court may "reasonably infer that these statements are based on personal knowledge" considering "as employees of [defendant], would have learned during the normal course of their employment how the company operates and what the company's policies are." *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 369 (E.D. Tenn. 2006); *Aguayo v. Oldenkamp Trucking*, 2005 WL 2436477, at *4 (E. D. Cal. 2005) (rejecting evidentiary attacks on plaintiff's declaration because "a reasonable inference is that [plaintiff], as an employee of defendant, would learn, how the employer operates, where the employer operates, what other

---

[3] Defendant resorts to name calling, claiming that Plaintiff's nine declarations are "cookie cutter," "fill-in-the-blank," "boilerplate," etc. But, considering that this is a motion for conditional certification, the similarity in Plaintiff's and the putative collective's job duties warrant similar declarations, in turn warranting certification. *See Sliger v. Prospect Mortg., LLC*, 2011 WL 3747947, at *3 (E.D. Cal. Aug. 24, 2011) ("Plaintiffs assert that their jobs were identical in the material respects covered by the declarations. Accordingly, since these are declarations, not literary works of art, there is no reason why their declarations should vary in those material aspects."); *Karic v. Major Auto. Cos.*, 799 F. Supp. 2d 219, 227 (E.D.N.Y. July 20, 2011) (rejecting defendant's complaints about plaintiff's "cookie cutter" affidavits where plaintiff not only submitted a complaint, but supported the allegations in the complaint with eight declarations describing a common practice, alleging common ownership, and the existences of other potential class members).

similar employees are doing, and where they are doing there [sic] jobs.").[4] What is more, many of the declarants identified (by name) putative collective members who performed similar job duties and were similarly not paid overtime. (*See* ECF No. 36-6.)

Defendant's job postings also support conditional certification. They confirm that regardless of where in the country they worked, Plaintiff and the putative collective shared similar primary duties. For example, a "Nurse Medical Management I" in Tennessee like a "Nurse Medical Management II" in Massachusetts are both responsible for "conduct[ing] pre-certification, continued stay review, care coordination, or discharge planning for appropriateness of treatment setting reviews to ensure compliance with applicable criteria, medical policy, and member eligibility, benefits, and contracts." (*Compare* ECF No. 36–9 at 3, *with* ECF No. 36–10 at 35.) Defendant's contention that Plaintiff is attempting to "have it both ways" with these job postings misses the mark. (Def.'s Br. 12, ECF No. 53.) These postings were simply submitted as evidence of the positions' similarly situated nature and Defendant's similar treatment of them. Plaintiff need not proclaim or disclaim her allegiance to them for purposes of this motion. Certainly, Defendant would not have posted online similar job postings for two completely different jobs.

**B.    Plaintiff and the Putative Collective Members Are Sufficiently Similarly Situated in Material Ways.**

Next, Defendant contends that Plaintiff and the putative collective are not sufficiently similarly situated because they worked on different health insurance plans that offer different benefits to its members and use different guidelines, conducted different types of reviews for different types of services and benefits, and were subject to different levels of supervision,

---

[4] *White* also found that the affidavits submitted in support of conditional certification need not meet the Rule 56(e) evidentiary standard because "[t]o require more at this stage of litigation would defeat the purpose of the two-stage analysis [of § 216(b)]." 236 F.R.D at 368.

5

depending whether they worked from home. (*Id.* at 16–19.) None of these purported differences preclude conditional certification. Foremost, regardless of the insurance plans Plaintiff, opt-in Plaintiffs, or the putative collective worked on, the type of reviews (e.g., prior authorization for durable medical equipment or concurrent review for inpatient hospital stays), where they worked, or the computer system they used for their reviews, Defendant does not—because it cannot—claim that their ***primary*** job duty is anything other than conducting medical necessity reviews. In fact, Defendant's own witnesses agree that conducting medical necessity reviews is their job. (*See, e.g.*, ECF No. 53–8, Bettencourt Decl. ¶ 11 ("The Medical Management nurses on my team review benefits requests for medical necessity."); Dunn Decl. ¶ 7 ("Fifteen of the nurses I manage conduct medical necessity reviews."); Pegg Decl. ¶ 9 ("My team of 16 UM Nurses are the only nurses within HealthLink that perform medical necessity reviews.").) Sharing the same primary job duty is the material fact relevant to whether Plaintiff and the putative collective should have been paid overtime, not whether they worked from home, reviewed a request for an outpatient or inpatient service, or which specific well-established guideline they used for their review. *See Perry v. Ranstad Gen. Partner (US) LLC*, 876 F.3d 191, 197 (6th Cir. 2017) (noting that plaintiffs' "primary duties" are what matter for purposes of the administrative exemption); 29 C.F.R. § 541.700(a) ("To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs.")

Tellingly, despite repeatedly claiming that these differences matter and are not "trivial," Defendant does not actually explain why. (Def.'s Br. 18, ECF No. 153.) It does not explain why it matters if the guidelines Plaintiff and the putative collective reviewed for their medical necessity reviews is different. It does not make Plaintiff or the putative collective more or less exempt if

6

they reviewed precisely the same guideline, had the same exact productivity goals, handled the same types of reviews, or had the same amount of time for each review. (*Id.* at 17–18.) Either way, they all share the same non-exempt primary duty.

Moreover, the modest factual showing standard does not require Plaintiff and the putative collective to be identically situated. *Monroe v. FTS USA, LLC*, 860 F.3d 389, 402 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 980 (2018) ("Two governing principles from our case law serve as guides: plaintiffs do not have to be 'identically situated' to be similarly situated, and the FLSA is a remedial statute that should be broadly construed."). As such, courts routinely conclude that individual fact differences are insufficient to defeat conditional certification. *See Tyler v. Taco Bell Corp.*, 2016 WL 2344229, at *4 n.5 (W.D. Tenn. May 3, 2016) (clarifying that the court does not consider whether individualized inquiries would be necessary because such inquiries are not relevant to whether conditional certification is appropriate); *Shabazz v. Asurion Ins. Serv.*, 2008 WL 1730318, *3 (M.D. Tenn. Apr. 10, 2008) (finding that defendant's arguments regarding differences that exist amongst the plaintiffs and putative class "effectively ignore[d] the requirement that Plaintiffs need only establish a 'modest factual showing' that there are similarly situated employees in order to gain initial conditional class certification"). As one court appropriately noted, "[a]n objection at this preliminary stage to conditional classification based upon individual employees' asserted different circumstances is clearly part of the FLSA defense bar's play book, but it has not found favor with the courts, and it does not persuade this Court in this case." *Zaniewski v. PRRC Inc.*, 848 F. Supp. 2d 213, 230 (D. Conn. 2012).

Further, if these differences are in fact as material as Defendant claims, the Court can revisit the issue at the second decertification stage. *See David v. Kohler Co.*, 2017 WL 3865656, at *8 (W.D. Tenn. Aug. 30, 2017) (granting conditional certification and reserving analysis of the

7

different factual and employment settings of each class member to the final certification stage with a more fully developed factual record); *Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 763 n.15 (W.D. Tenn. 2011) (granting conditional certification and noting that if discovery shows that employees of each entity are not similarly situated, then the Court may decertify the class, dismiss the opt-in plaintiffs, and sever the lead plaintiffs into individual actions, or, in the alterative, create sub-classes). Simply put, the Court may decide whether these differences will ultimately matter after discovery.

### C. The Merits Are Not Considered At this Early Stage.

Now is also not the time for this Court to consider the merits of Plaintiff's claim or Defendant's defenses. Defendant argues that Plaintiff's motion should be denied because she cannot show that she and the putative collective were subject to a common policy or plan that violated the law, or were misclassified. (Def.'s Br. 13–15, ECF No. 153.) But, it is black letter law that in this Circuit, "showing a 'unified policy' of violations is not required" for conditional certification. *See O'Brien*, 575 F.3d at 584. Plaintiff and the putative collective are similarly situated if "their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Monroe*, 860 F.3d at 298 (citations omitted). Their claims are unified by a common theory of Defendant's statutory violation. They each allege that based on their primary job duty of conducting utilization reviews, Defendant has misclassified them as exempt under the FLSA. The dispute over whether they have been misclassified, however, is a dispute for another day. *See Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 642 (W.D. Tenn. 2009) ("At this stage the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."); *Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103, 106 (D. Conn. 2007) ("As

long as a plaintiff asserts a plausible basis for her claim, the merits of that claim are irrelevant to the similarly situated inquiry at the conditional class certification phase."). For this reason, Plaintiff's declarations do not need to include a statement about "exercis[ing] no discretion and judgment."[5] (Def.'s Br. 15, ECF No. 153.) Plaintiff simply needs to show, and has shown, that she and the putative collective share the same primary job duty, were paid in the same manner (by salary) and were classified as exempt.[6]

### III. THE COURT SHOULD ADOPT PLAINTIFF'S REVISED PROPOSED NOTICE AND NOTIFICATION PROCEDURE WITHOUT FURTHER DELAY.

Defendant takes issue with several aspects of Plaintiff's proposed notice and distribution plan, yet fails to submit an alternate proposed notice. The Court should deny Defendant's request to further delay notice by providing it 30 additional days to reach an agreement with Plaintiff, or alternatively, to later have "the opportunity to address in more detail the inadequacies of the proposed notice and process." (*Id.* at 20.) There is simply no reason to further delay deciding these issues now, especially considering the running statute of limitations, which is precisely why sending notice early is critical in FLSA cases. What is more, none of Defendant's objections or proposed changes to Plaintiff's proposed notice are justified. First, notice should not be limited to "One First Class Mail mailing." In this modern era, courts, including this one, have routinely

---

[5] Surely, had Plaintiff included such statements, Defendant would have cried foul, claiming that they were conclusory and improper legal conclusions.

[6] At the appropriate time, Plaintiff's evidence will show that Defendant cannot meet its exemption defenses. *See Clark v. Centene Co. of Tex., L.P.*, 656 Fed. App'x 688, 694 (5th Cir. 2016) (affirming that utilization review nurses are not professionally or administratively exempt from overtime pay); *Rego v. Liberty Mut. Managed Care, LLC*, 367 F. Supp. 3d 849, 851 (E.D. Wis. 2019) (granting summary judgment in favor of utilization review nurses on exemption defenses). And, despite its suggestion to the contrary, not every RN is definitively exempt under the FLSA. Instead, RNs' primary duties must require the consistent exercise of discretion and independent judgment. 29 C.F.R. § 541.301(b), (e)(2). *See Clark v. Centene Co. of Tex., L.P.*, 2014 WL 4385412, at *5 (W.D. Tex. Sept. 3, 2014) ("Even though many Plaintiffs are RNs and hold advanced degrees and certificates, the CM job does not *require* those advanced qualifications.").

approved FLSA notices being disseminated via multiple means. *See Rodkey v. Harry & David, LLC*, 16-cv-311, ECF No. 45 (S.D. Ohio June 6, 2017) (approving notice to be mailed, emailed, and posted on the defendant's intranet site where employees worked from home rather than an office). Notice via email and posting on Defendant's intranet, especially since putative collective members worked from home, should be permitted. Second, courts routinely approve reminder notices. *See, e.g.*, *Shoots v. iQor Holdings, US Inc.*, 2015 WL 6150862, at *23 (D. Minn. Oct. 19, 2015) ("[A] reminder letter gives notice to [those] who do not receive, open, or view the initial letter [and helps those] who misplace or forget about the… letter."). Third, the notices approved by this Court include a case caption. (*See, e.g.*, Ex. 2.)[7] Fourth, language about discovery obligations and costs should not be included because it chills participation, runs contrary to the FLSA's purposes, and may be inaccurate. *See Alexander v. CYDCOR, Inc.*, 2012 WL 1142449, at *8 (N.D. Ga. Apr. 6, 2012) (recognizing that defendant's preferred warnings about the burdens of litigation are by no means a legal requirement and concluding that such language was "unnecessarily strong and could thus chill potential opt-in participation"); *see also Cox v. Gordmans Stores, Inc.*, 2016 WL 6962508, at *4 (E.D. Mo. Nov. 21, 2016) (holding that "[p]laintiffs are not required to notify potential opt-in plaintiffs that they might be liable for certain cost or to travel for depositions" because "such notice language would have a cooling effect on participation in the class and is contrary to the purpose of the FLSA"); *Hussein v. Capital Bldg. Servs. Grp., Inc.*, 152 F. Supp. 3d 1182, 1196–97 (D. Minn. 2015) (same) (collecting cases). Plaintiff's revised proposed notice should be adopted.[8]

---

[7] Ex. 2 includes notices previously approved by this Court in cases handled by Plaintiff's counsel.
[8] To avoid further delay, Plaintiff agrees to modify the notice slightly and include the following: "While the lawsuit is pending, you may be required to provide information, appear for a deposition or at a trial, or otherwise participate in the case." Exhibit 3 includes a redlined version of the original notice with these changes.

10

Respectfully submitted,

**NICHOLS KASTER, PLLP**

Date: November 6, 2019

s/Rachhana T. Srey
Rachhana T. Srey, MN Bar No. 340133
Caroline E. Bressman, MN Bar No. 0400013
Neil D. Pederson, MN Bar No. 397628*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
srey@nka.com
cbressman@nka.com
npederson@nka.com
*Admitted pro hac vice*

**DONATI LAW, PLLC**
William B. Ryan, TN Bar No. 20269
1545 Union Avenue
Memphis, TN 38104
billy@donatilaw.com

**Attorneys for Plaintiffs
and the Putative Collective**

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2019, I filed the foregoing document via the Court's ECF system, which will cause a copy of the same to be served via email on all attorneys of record in this matter, including Brett C. Bartlett, Kevin M. Young, and Jade M. Gilstrap, attorneys for Defendant.

s/ Rachhana T. Srey
Rachhana T. Srey
